DeSONIER, Judge.
This is an appeal from a judgment removing the father as tutor of his minor children in the succession of his late wife and appointing in his stead the children’s maternal grandmother as provisional tutrix.
The trial court, citing Code of Civil Procedure Article 4231, disqualified the husband finding him unfit to perform the duties of his office for willfully refusing to support the children, and attempting to lie about his conduct in that respect.
We affirm.
The parties were legally separated on November 15, 1973 and divorced on January 28, 1975. The wife was granted the care, custody and control of the four minor children and the husband was ordered to pay $25 per week for their support.
The husband had been in arrears in his payments as far back as December 19, 1973 at which time he owed $1,265. He was 51 weeks behind in payments. He was at least $3,000 behind in payments at the time of the wife’s death.
*1368 The appellant claims that he did not make payments because he was not allowed to visit the children, that his income was very low, and that he could not afford to pay $25 per week although four children were involved, and that his wife’s income was greater than his. The wife was employed by the Jefferson Parish School Board with an income of approximately $700 per month, out of which she was trying to support herself and her children.
Particularly impressive, in the voluminous record, is the testimony of Sister Marie Thomas Brogen, Principal of the Re-demptorist High School, where most of the children attended. She was very concerned and fond of the children and their mother, and spoke very highly of all of them. She knew that the family owed a tremendous amount of money and that there was never any attempt by the father to pay any of the bills, that the children worked in order to help. Sister Brogen was willing to do anything possible to help the children, including paying the tuition of one of the children out of her own funds. The children were well liked, most of them were well adjusted, very involved, and very good children. Sister Brogen made it clear she did not wish to interfere in any way, but she was very concerned about the children and knew they loved their grandmother and were frightened of their father.
After the mother’s death, the father came to see Sister Brogen. It was the first time he had every discussed the children or their school careers with her. The children themselves testified that they did not wish to live with their father but preferred to live with the grandmother.
Code of Civil Procedure Article 4231 provides in pertinent part: “No person may be appointed tutor who is: (6) A person who, on contradictory hearing, is proved to be incapable of performing the duties of the office, or to be otherwise unfit for appointment because of his physical or mental condition or bad moral character.”
The Succession of Quave, La.App., 214 So.2d 260, and Succession of Scott, La.App., 303 So.2d 897, deal with this provision of disqualification. Both cases stress that before the relative having the highest priority can be deprived of tutorship that relative must be found disqualified for some valid reason.
The record reflects that in all the years the parties were separated the father made very few efforts to see the children. His lack of concern and support for the children during all of these years clearly supports the trial court’s findings.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED. .