## KEANE WONDER MINING CO. v. CUNNINGHAM.

(Circuit Court of Appeals, Ninth Circuit.   May 3, 1915.)

No. 2495.

1. MASTER AND SERVANT &⚬278—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—SAFE PLACE TO WORK.

In an action for personal injuries received by a miner, evidence *held* sufficient to warrant the jury in finding that the owner was negligent in not making the place of work safe by knocking down loose ore hanging on the roof of a stope before the miner was put to work thereunder.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. &⚬278.]

2. COURTS &⚬7—JURISDICTION—INJURIES TO PERSON—TRANSITORY ACTION.

An action for personal injuries is transitory, and may be maintained in the state in which service can be obtained on the defendant, though the injuries were caused in another state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 14, 16, 22–31; Dec. Dig. &⚬7.]

3. COURTS &⚬8—TRANSITORY ACTION—"PUBLIC POLICY."

Where the statutes of the state in which a transitory cause of action arose are not in substance inconsistent with the statutes or the public policy of the state in which the action is brought, they will be recognized and applied, and to be contrary to the "public policy" of the state the foreign statute must be against good morals or natural justice, or such that the enforcement of it would be prejudicial to the general interests of the citizens, it not being sufficient that it differs from the law of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 18, 19; Dec. Dig. &⚬8.

For other definitions, see Words and Phrases, First and Second Series, Public Policy.]

4. MASTER AND SERVANT &⚬203, 227—INJURIES TO SERVANT—ACTION—LAW GOVERNING.

In an action brought in Nevada for personal injuries to an employé received in California, the provisions of the California statute abolishing the defenses of assumption of risk and contributory negligence can be applied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543, 668, 669; Dec. Dig. &⚬203, 227.

What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

&⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Nevada; E. S. Farrington, Judge.

Action by James Cunningham against the Keane Wonder Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Gavin McNab, B. M. Aikins, and A. H. Jarman, all of San Francisco, Cal., and Sweeney & Morehouse, of Reno, Nev., for plaintiff in error.

Dixon & Miller, J. B. Dixon, and A. Grant Miller, all of Reno, Nev., for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge. The defendant in error, who will herein be designated the plaintiff, in his complaint alleged that he was injured while working as a mucker in the mine of the defendant, that the defendant carelessly drove a stope upwards from a tunnel situated in its mine, and failed and neglected to use ordinary and reasonable care in inspecting the roof or top of said stope, and failed and neglected to pick or bar down from said roof loose rock and ore therein, and caused the plaintiff to work in said tunnel at the bottom of said stope while the stope was in a dangerous condition, owing to the negligence of the defendant in not properly timbering the same, and in not properly inspecting and examining the same, and in not properly picking or barring down the loose rock at the roof of said stope, by reason whereof an amount of ore and rock fell, causing serious injury to the plaintiff.

It is contended that the court below erred in denying the defendant's motion, at the close of the testimony for an instructed verdict in its favor, and it is said that the evidence conclusively shows that it. was the duty of the plaintiff, before working in the place where he was injured, to examine the roof of the stope and to bar down any loose material that might remain thereon, and that there was no evidence to show that the defendant was negligent. The view of the court below on this branch of the case is shown where, in denying the motion for a nonsuit, it said:

"Now, here is a large chamber at the point where the accident occurred. The hanging wall was 25 feet above the foot wall, and an enormous body, 60 tons of ore, were left on the hanging wall. It seems to me that in itself was negligence; at least it is a fact tending to show negligence. On the existence of that fact, I hold there is testimony here showing negligence."

The evidence indicated that the ore body varied in thickness, and was from 8 to 15 feet or more, and that it contained a flat seam carrying galena running through and causing a cleavage at about six or seven feet above the foot wall. The ore below the seam was broken out by the use of piston drills working against the breast. The ore above the seam was mined by means of Waugh drills, which were used to blast down the ore from the hanging wall. At the place where the accident occurred, the hanging wall was graphitic schist. After shooting the holes drilled by the Waugh drills, there would,.

at times, remain ore bodies, more or less shattered, but still unbroken from the hanging wall. Such an ore body remained above the place where the plaintiff was working. The ore body was white quartz, and between the ore body and the hanging wall there was a gouge, varying in thickness from 1 to 18 inches, a soft black graphitic schist, the presence of which rendered any body hanging below it likely to become detached from the hanging wall. The tendency of the blasting which followed the use of the Waugh drills was to loosen the ore which might still remain thereafter on the hanging wall. To prevent the falling of such ore, and to make safe the working place underneath the same, it was the custom to bar down such rock as might be loose and removable. The defendant contends that this duty of inspection and barring down rested upon the muckers, and argues that it has discharged its full duty in placing that burden upon the muckers, and that therefore it was not negligent. But the plaintiff testified otherwise. He said that it was the duty, not of the muckers, but of the miners, to bar down the loose rock. He testified: "The miner goes in first and bars down the loose rock, and he tells the mucker when it is safe for him to come in"—and he said that on the day on which he was injured, the foreman, Mr. Roper, took him in there to work, "and I though it was all right. Mr. Roper said nothing to me at all." He testified also that:

"Sometimes the foreman himself would bar down the loose rock and see that the place was safe before we would go in there to work."

So the witness Dropulich testified that it was not the muckers' business to use the pinch bars to pick the rock from the roof—"that is a miner's business. I never was work with that. I didn't see it either." Perez, another mucker, who was working in the mine, testified to the same effect, and Porter, who was a miner, testified that it was his duty "to bar down or pick down or sound the rock after a blast to see whether it was safe, or to make it safe." The defendant offered testimony to the contrary. We have nothing to do, however, with the weight of the testimony. We are not convinced that the court below erred in holding that the evidence offered by the plaintiff, if true, was sufficient to show negligence on the part of the defendant. This is not a case in which the only evidence of negligence is the fact of the accident. The jury may have found negligence in the fact alone that ore was allowed to remain on the hanging wall, or that there was want of proper care in inspecting the ore hanging from the roof underneath which the plaintiff was put to work; there being evidence tending to show that a proper inspection and testing of the rock would have disclosed the fact that it was likely to fall. The defendant owed the plaintiff the duty of furnishing him a reasonably safe place in which to work, and from the whole evidence it is not an unreasonable inference that the place could have been made safe by the use of proper precautions.

[2] The action was brought in a state court of Nevada, upon a cause of action which arose in the state of California, and the cause was removed by the defendant to the District Court of the United States for the District of Nevada. Error is assigned to the instruction

whereby the court charged the jury that the case was to be governed by the statute of California, which provided that assumption of risk was no defense to an action of that nature, and that contributory negligence should not bar recovery where the plaintiff's contributory negligence was slight and that of the employer was gross in comparison, in which case the damages might be diminished by the jury in proportion to the amount of negligence attributable to the employé. It is said that this instruction was error for the reason that, under the law of the state in which the action was brought and was pending, assumption of risk and contributory negligence were available as valid defenses to such an action. There can be no doubt of the right of the plaintiff to bring his action in the state of Nevada, provided that he could obtain service upon the defendant therein. Said the court in Atchison, Topeka & Santa Fé Ry. Co. v. Sowers, 213 U. S. 55, 67, 29 Sup. Ct. 397, 401 (53 L. Ed. 695):

"An action for personal injuries is universally held to. be transitory, and maintainable wherever a court may be found that has jurisdiction of the parties and the subject-matter."

[3] In Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439, Mr. Justice Miller said:

"Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties."

In Texas & Pacific Ry. Co. v. Cox, 145 U. S. 593, 605, 12 Sup. Ct. 905, 908 (36 L. Ed. 829), the court said that this rule is generally recognized and applied where the statute of the state in which the cause of action arose—

"is not in substance inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced."

What was meant by the term "public policy" of the state is shown in Northern Pacific Ry. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958, in which the court quoted with approval from Herrick v. Minneapolis & St. Paul Railroad, 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771, the following:

"But it by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens."

In Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40, the court said:

"With very rare exceptions the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it."

The cases so cited and the principles therein announced seem to be conclusive of the question which is here presented.

[4] As to the defenses which may be interposed to actions of this class, the Legislature of Nevada has not as yet seen fit to take the advanced position which has been reached by the Legislature of California. In Nevada the old defenses are still pleadable in bar. But the courts of Nevada are open to those whose right of recovery depends upon the law of the state where the injuries were received. To permit in the court of the forum defenses which were not pleadable in the state where the cause of action arose would be to deprive the plaintiff of a portion, if not the whole, of his right of action, granted by the laws of that state. In what respect would it contravene the public policy of Nevada to accord the plaintiff the rights which are given him by the state of California? It certainly cannot be said that it would be against "good morals" or "natural justice," or that it would be "prejudicial to the general interests" of the citizens of Nevada. There is no statute of Nevada which prohibits the enforcement of this cause of action in accordance with the laws of the state in which it arose. Some of the state courts have adopted a restricted rule of interstate comity, which, if applied in this case, would fully sustain the defendant's contention. But in the federal courts, following the lead of the Dennick Case, in which Mr. Justice Miller declared a liberal rule of comity, the tendency has been to establish a broader rule, a rule which accords, we think, with enlightened procedure, justice and common sense.

A decision directly in point is Missouri Pac. Ry. Co. v. Larussi, 161 Fed. 66, 88 C. C. A. 230, in which the Circuit Court of Appeals for the Seventh Circuit, in an action brought in Illinois upon a cause of action which arose in Kansas, held that the law of Kansas relieving railroad employés from the common-law rule of assumed risk from negligence of fellow servants was applicable, and would be enforced in the court of the forum. See, also, Theroux v. Northern Pac. R. Co., 64 Fed. 84, 12 C. C. A. 52, in which the Circuit Court of Appeals for the Eighth Circuit held that an action for death by wrongful act occasioned in a state, which gives three years for suing therefor, may be maintained at any time within the three years in another state which gives only two years in which to bring such an action.

We find no error. The judgment is affirmed.